Court of Federal Claims, on the ground that there is jurisdiction in the lower court in this instance. Judge Dietz held that there was not, based on an interpretation of United States v. Teston. But Teston very clearly said that the Back Pay Act provides a money mandating cause of action where the employee is in the classified position and alleges an unwarranted deprivation of salary. The issue in Teston was that the employee was seeking another position he wasn't yet classified in. And that's why the Supreme Court said there was no jurisdiction. So we respect, we believe Judge Dietz was in error in how he construed that question. Can I, can I go back to, there are several different arguments at play here. One of them is the idea based on what Castro and Elgin, that the Civil Service Reform Act ousts whatever jurisdiction might otherwise have existed under the Tucker Act, whether it's the Back Pay Act or anything else, for a challenge to a matter covered by the Civil Service Reform Act, and this one is removal. Why does that not fully resolve the matter? Because I don't think it applies to what is really construed as a structural question. Now in Freytag, the court dealt with a related issue. Whether or not it was something within The government, I think, tell me if I'm misremembering, acknowledges that the board, whether the administrative judge or the full board, can in fact hear and adjudicate a challenge to the constitutionality of the agency removing during a period when there is no full board. I have no doubt that it could hear it. The question is whether that is the exclusive agency or form for the matter. So why isn't the logic of Elgin and Fausto that at least as to a constitutional matter that the board can hear, it's the only form to do that? Because I think they go to the constitutionality of the merits of the question rather than the structural issue of whether there's even a lower agency to even act on the question of deprivation of salary. When one looks at the issue in a new process and new, I'm sorry, excuse me, new process in Noel Canning, the Supreme Court very clearly said that where the adjudicating agency has no members in office, it has no legal power at all. And the question of Freytag was, well, there are structural issues that really transcend an agency. I'm sorry, there is an agency now. There is an agency now, but there wasn't, number one, at the time we brought the action. But the now existing agency can hear the argument that during a period in which there was no MSPB, all removals were unconstitutional. Well, we'd have to go back to the agency. That's your argument, right? It's not that all removals were unconstitutional. It's not a small proposition. It's not a small proposition. It actually affects hundreds of people because there's a five-year gap when the MSPB had no members. And so it's a significant, it is a structural question, really, whether an agency can act at all. Now, in new process and Noel Canning, the court rejected this proposition, the Supreme Court. It said, no, the agency itself is not the one to determine whether it's lost its powers in effect. That's a question that does go to the courts. And so where the question relies upon or devolves upon an unwarranted deprivation of salary, in other words, when there's no legal power to deprive, it's really not something that must be filed within the agency. A new enterprise in Noel Canning, you make it pretty clear that one can go beyond the agency to the judicial system. So if the claim arises from a money-mandating statute, as we say it does under Teston, the Court of Federal Claims is an appropriate body. So I think that although in theory the MSPB, now that it exists again, could be asked to adjudicate whether that earlier deprivation of salary was constitutional. Have you asked it to do that? No, because they didn't acquire it. I didn't mean to interrupt you, Your Honor. No, no, no. The proceeding is underway now, right? The proceeding is concluded.  But it didn't start until after all of this process took place. I think we even filed this appeal just before it acquired membership. I see. In March of 2012. Yeah. So that issue didn't come before the court, the administrative, well, the MSPB at all at that point. So just, this is maybe a little bit of the mootness question that's raised. So since their nonexistence was temporary, everybody understood that to be the case, and that's what happened, all the, everything else could have been adjudicated, you could have gotten back pay. I mean, you know, for cases, you could have theoretically, even if the adjudication was delayed for five years, your back pay would then just exceed the amount it otherwise would have, for people who were ultimately adjudicated and find to have merit in their claims, right? So in your case, given what's left on, is your mootness argument that it's not moot because one of your claims had to do with the fact that he should have never been fired in the first place during the period in which the board was nonexistent? The firing itself should not and could not have happened? I think the claim is that he should not have been deprived of salary during the period when the agency, the process for terminating didn't exist. In other words, the agency itself, in this case the FDA, has a duty to prove its case in the MSPB. Can't do that if the MSPB doesn't exist. So the issue is not really the merits. When there is a removal, does salary stop getting paid during the, I'm going to make for there to be even an initial AJ ruling in the board? Not necessarily. In fact, in this case... No. I mean, the answer is no, right? If someone is removed, they're removed and their pay stops. And then the employee has the option of trying to appeal it to the MSPB. Well, I think what Judge Sorrento was asking was prior to the actual formal removal during the process itself. No, no, no, no, no. Post removal. Post removal. Post removal, formal removal, you're gone 10 days from now. So salary stops even though, even before the board gets to adjudicate it. And that's so even though if the employee, former employee, goes to the board, it's the agency's burden to justify what it did. You don't wait for the justification in order to stop the payments. I think that's the practice. I don't recall offhand if there's a specific regulation that states' salary must ipso facto terminate. Well, if someone is removed, there's no basis on what you can pay them. I have to agree, as a practical matter, that's true. And so you can go back immediately to the administrative law judge in that case and say, now, wait a second, my conviction was vacated. My conviction was expunged under state laws, as is the case here. And the administrative law judge could immediately say, well, no, in that case, we should at even if you can't be allowed to practice in the agency temporarily. Do they have that authority? I've never seen that happen before. You're removed. You're off the rolls. The agency can't lawfully be paying you a salary. Someone, the employee decides to challenge it, goes to the MSPB, and what, you file for an emergency stay to put me back at work? Well, maybe there are procedures for doing that. I've never heard of it. I don't think it's a procedure, but on the one hand, the government says, well, the MSPB can hear this very significant constitutional question of whether you can be deprived of salary when there are no members. It would seem to me that this lesser question of whether there can be, in effect, a suspension with salary during the full removal hearing process would still be within the jurisdiction. I think they have the authority to hear that. So it probably doesn't happen very often for a very simple reason. This is a unique case. Very rarely is the criminal conviction vacated and then expunged. And so this is an unusual circumstance, but there was no administrative law judge and there was no MSBP to go to to do precisely this, to say, well, I've been removed, but since then it's been vacated and expunged, and therefore I should be paid at least during this as an equitable matter, because now there's a serious question of whether I should be removed. And you think an AJ at the board has the legal authority to do that? No, the board has the legal authority. The AJ is a fact finder. I don't think the AJ has that authority, but the board itself probably would. If the board itself has the power to say, well, you were structurally deprived illegally of salary when there are no members, it certainly would have the power to say you should be paid temporarily if there's an equitable reason. It's a very rarely litigated, if ever, question because I think these circumstances are very rare. And the answer is I think it probably can be done, probably is very rarely done. Also, I'd stress, most terminated or removed employees don't do this. If they're convicted of a crime in general, they probably accept the result. It's very rare, I think, that there's ever any litigation over the removal following a conviction. Can I ask you about another matter? The government may have more information than you do on this, but we live through this whole thing on appeals, but this is just a small portion of our docket. And it seems like in this case, the government came in and moved for the AJ to dismiss without prejudice until the board is ultimately confirmed. Was that a standard practice that you know of in that case? And did you have the ability to say, no, no, no, I want to go forward because I want to at least get in the queue? I can say, I'm sorry. No, go ahead. I can say exactly what happened. The government made this motion under Lucia, under Lucia doctrine, because there had been an internal ruling within the Attorney General's office that Lucia required a total stoppage in the MSBP process until there were members. So the Attorney General had made a determination, and ultimately the government in MSBP cases began seeking that application. So this was initiated because I think there was a finding in the AG's office. During the process, admittedly, the government offered to waive the MSBP hearing process after the AJ case, excuse me, the MSBP process completely if we wanted to go directly to an appeal. And we declined that because we wanted the process that's available at the MSBP, which functions as a court. So I didn't want to lose that level of process for my client. So this is what I understood you to say. First, that this is not the only case in which the agency went, filed a request to dismiss appeal to the board. I don't mean, I mean the initial appeal, right? To the board on Lucia grounds. To my knowledge, this was a practice that was being used by the government. We haven't seen that before. But at some point, the government, the agency's DOJ decided that it was okay for these matters to proceed to the administrative judge. And with a little assist from Congress, the administrative judge decision could come up to us directly because there was no full board for that decision. That's not how I understood it. We had during this period five years worth of direct appeals from AJ. No, I apologize. Yes, I think that's what the government's position was. That one could skip the MSBP. They would agree to that and come here to direct appeal. I'm sorry, from the AJ. From the AJ. But I declined that in this instance because the MSBP is a court. And I wanted my client to have the benefit of that first level review where there is probably greater discretion to change the result than there would be here. And so I felt that it was not, although I appreciated the offer, I didn't think it was fair to my client because we lose a level of due process. So I hope that's clarified. Well, the government may have a little more information than you did in terms of what their standard practice was, so we'll ask them. My impression was that there were other cases where the Lucia doctrine was applied. Thank you. You're into your rebuttal, sir. Thank you. Good morning. Good morning. May it please the Court. In this case, the appellant seeks to undermine the CSRA's integrated scheme. Can we start with just where we left off, just in terms of our general information about what the practice was? So after Lucia and before McIntosh and whatever our opinion was that said no, no, no, this is okay, was that the uniform practice by the Justice Department to go in and ask for dismissal without prejudice? Well, the Justice Department wasn't the employing agency in all these cases, but the appellant's employing agency, because this information is still under seal, that was a practice in cases where they were the employer. So it was just an agency-by-agency basis determination as to how they wanted to proceed? But who was construing what was compelled to be done under Lucia? That must have come from DOJ. I don't know where the actual opinion came from. I mean, the appellant's represented that it's from DOJ. What Lucia requires cannot possibly have been an agency-by-agency determination. No, but how to handle that as a litigation strategy, that was an agency-by-agency determination. Even when DOJ is doing the representing, as it always does, of the agency? In the Federal Circuit, but not in the MSPB itself. Not to the Board? The agencies represent themselves before the Board. So as far as you can tell, in some cases during this whole interim period, they did go forward, right? The agencies did go forward with their cases before the AJ, and then the parties, the employee had the ability to appeal the AJ's decision in the absence of the Board. Because it's just Toronto putting it out. We were seeing cases come up. Yes, I understand. That was the case. Certainly, the MSPB, the administrative judges continue to operate and continue to decide cases, even when the Board lacked a quorum. Can I ask just another technical question that's outside of this case? When the Board got back, it did a few things. And one of the things was to, I don't know, retroactively or whatever, reinstate AJs or do something about AJs. Why was that? Was that only the case for AJs that had been hired during the interim period? Or did they have to do that for all of the AJs? I'm not entirely sure. I believe it was during the period for administrative judges who were hired during the period when the Board lacked a quorum. They ratified their hiring. So even if they were inferior, they're not principal officers, but to the extent that they were inferior officers, then the ratification, I guess, affirmed whatever they had done when they were prior to the quorum being restored. Now I'd like to talk about your case. Can you start with mootness? Because why, at least, isn't that aspect of your friend's case not moot, if his claim was that they didn't have any authority to hot fire him in the first place when the Board was absent, non-existent? The claim is moot. I mean, this case has been litigated in front of the administrative judge. But even if he, no matter what the outcome of this case, under his theory as I understand it, he still would be entitled to something if his claim that just the fact that the agency took him off the payroll when the Board wasn't existent was a violation. That claim, there's no reason why that claim couldn't have been brought in front of the MSPB. If he won, for instance, if he won, the MSPB said... No, but he's saying even if he lost, that doesn't affect his ability to get back pay for a period. He's charging, at least one of his allegations, is the discharge itself was not lawful because there was no Board. That isn't affected or doesn't go away just because he loses at the end of the day, if somehow that would be found to have merit. Well, the entire point of him not being paid was because he was removed. So if the removal was improper, either because there wasn't enough evidence or because his criminal conviction was expunged... No, well, what if the removal is improper because there's no Board? Because there's no Board. Yes, that's still his removal, though. So if it's a removal challenge, then the Board has to decide it. I mean, that's what the CSRA provides. Any removal challenge, for whatever reason, has to go to the Board. In this parallel proceeding at the Board, did the appellant raise that argument? As I understand it, he didn't. And what is the status of that proceeding? Is it finally concluded? It's finally concluded. Concluded, it's before this Court. It's under Number 251048. Twenty-five? Twenty-five. It was recently filed. This year. Okay, and so in that case, he, of course, challenged his removal, but not on this ground about the structural legal question of whether the Board or the agency lacked authority to remove him at a time when the MSPB lacked a quorum. I mean, he hasn't filed his brief yet, but he didn't raise that argument when he was presenting it to the MSPB. So that would be a new argument. Do I remember right, in your brief, you acknowledged that he could have and that the Board could have, in fact, ruled on that?  Okay. Yes, because it's a removal. It's the adverse action. So whatever the reason for the removal, whether it's because there's a facial constitutional challenge like in Elgin or in any other of these cases where they're challenging or read where the adverse action stems from the removal, the failure to receive payments, those are all cases that the Board has exclusive jurisdiction to consider. So explain again how anything that went on or could have gone on in the Board makes this case moot. Oh, it makes it moot because to the extent that he won and the Board said, you are right, you shouldn't have been removed for whatever reason, because the agency didn't have authority to remove in the absence of a Board quorum for whatever reason. And he got the relief that he would be entitled to receive before the Board, back pay, attorney's fees. What would be left for the Court of Federal Claims to do? So if he had gotten all relief, already gotten all relief in another forum, that seems a fairly simple mootness point. That has not happened. That's correct. The question, though, is to what happens when? It sounds to me like what you're saying is that if there are two possible forums, that the case in one of them is moot if the other one remains available or was available. That doesn't sound like a mootness argument. Not exactly. It's a valid argument anyway. The question of what happens to an employee when the MSPB lacks a quorum. Where do they go? What do they do? How do they challenge those decisions? The fact that the quorum was restored, that forum is now, there's no question as to whether or not it's available. That resolves any question about whether or not, you know, the Court of Federal Claims is open for an employee to challenge their removal there. Why? Why? Because they've already challenged the removal before the MSPB. So the court doesn't necessarily need to decide that jurisdictional question. I get the point if the reason that the board's openness negates jurisdiction under the Tucker Act, the Fausto-Elgin point, which if you're right about, there's no jurisdiction, and we don't need to talk about mootness. Without that, though, I don't understand the mootness point. The best I could provide to you at this point is the question of whether or not, the court doesn't need to necessarily reach what happens and whether or not the forum of the Court of Federal Claims is open when there's a lack of a board quorum. Because the restoration of the board quorum resolves any potential need to go to the Court of Federal Claims. Could I just do this one more time? I'm not aware of a mootness principle that says when two forums are open, are available, the dispute in one of them is moot because there is a second forum that's available. The dispute that's moot isn't about whether or not the removal is proper. It's whether or not the Court of Federal Claims has jurisdiction in these kinds of circumstances. Does the Back Pay Act reach a request for back pay when the underlying violation is a constitutional one? When the underlying violation... As opposed to a statutory one. I'm not sure entirely how to answer the question. The Back Pay Act requires that there's an unjustified or unwarranted employment action that's decided by an appropriate authority. In Foster, the Supreme Court said that the Court of Federal Claims is not an appropriate authority to make that type of determination. So that's why the Back Pay Act really isn't applicable here as a basis of Court of Federal Claims jurisdiction. And the case that's cited for that proposition by the appellant is Teston. But Teston, first of all, didn't reach the Back Pay Act. And more importantly, Teston... Because it would reach the Classification Act. And Teston was decided in 1976, which was two years before the CSRA came around and required that all of these removal challenges or all challenges to adverse personnel actions be brought before the Board. The other points I just want to cover is... First of all, in Elgin, the Supreme Court said that there's no exception to this. Everything that's about a removal, whether it involves a facial constitutional challenge, which this case does not, it still goes before the Board. There's no independent jurisdiction to consider it. The second point, the agency's removal authority isn't connected to the Board's quorum. The Board doesn't determine... But that's the merits point. Sorry, I thought we moved on to the merits or to the jurisdictional arguments. No, no, no. The argument that it is incorrect to say that any employee may not be removed when there is no Board available, that's the argument about whether the statutes authorize a removal just because one of the statutes may be currently inoperative, namely the Board review statute. What does that have to do with... But that question wasn't reached, and it's not before us. It was reached as to whether or not the Court of Federal Claims could consider it. Yes, that's right.  So what's the role of the takings claim in this case? The theory would be that he has a property interest in his employment. Do we have to decide that, or is there some ground on which we can... Not can, I mean... You have an answer on taking that says he has to concede that it was lawful. I want to put that aside. I understand. Does one of the other arguments take care of the takings assertion? Does, for example, Fausto Elgin take care of it, or what? Yes, because to the extent that he's making an argument about his removal, it belongs in the MSPB under Elgin. No matter what the underlying theory is, to the extent that it's a challenge to his removal, it belongs in Elgin. It belongs in the MSPB under Elgin. Just the final point, because there's questions about the authority of the agency. So I just want to clarify, there are three separate issues. There is the authority of the agency to remove, the authority of the administrative judge to make a first decision as to whether or not the removal was valid, and then there's the authority of the board to act in reviewing the administrative judge's decision. And so the cases at the appellant sites, like Noel Canning, those don't apply here. First of all, they don't apply here because the Supreme Court already said in Elgin that whatever your challenge is about authority, it belongs in the board. But Noel Canning, in those cases, the analogy would be if the board, without a quorum, had already reviewed the administrative judge's decision and then took some action on it. Then perhaps there would be a challenge as to whether or not the board had authority to take the action that's assigned for the board to take by law. But that's not the case here. There's no analogy to a matter where the quorum, the board's quorum, has some sort of effect on the agency's statutory authority to manage its personnel. So I just wanted to highlight that distinction. Just to clear up in this, again, less about this case and more about just because we do all of these MSPB appeals, is there authority under its regs or, in your view, under the statute, is there some injunctive authority that the board has or something that you can go up and say, I'm so right that temporarily you ought to put me back in my job while we're adjudicating this? I believe that a board does have some sort of, or an administrative judge, I don't think the full board, but that that body has some sort of interim relief that it can provide under a set of unique circumstances that are provided by either statute or regulation. But they can provide some sort of interim relief in certain cases. Okay, thank you. Thank you. Thank you. We request that the court affirm the judgment below. I'd like to know, with respect to Elgin, which a lot of the government's argument is based on, Elgin dealt with the constitutionality of firing someone because of their civil disobedience by not registering for the selective service. There, the constitutional question is immersed within the personnel issue. This is different. The constitutional question here has nothing to do with the personnel issue. The constitutional question is whether if the disciplinary process doesn't exist because the MSPP doesn't exist, is there legal power to deprive someone of salary? And it is a constitutional right to hold salary. That's why, in fact, we have a back pay act in the first place, because one can't be deprived in an unwarranted manner of salary. The Fifth Amendment protects the government employee's right to their salary. It's not like a private employer where you have to sue for breach of contract. There's a Fifth Amendment right to that salary. And that's the essence of this case, that here, if the agency doesn't exist, that means the methodology by which Congress said termination and removal can take place also doesn't exist. And this is very important because Congress wanted a two-step process. It was not willing to let a supervisor say you're removed. There are all sorts of interpersonal reasons why that could happen. It required the agency on the employee's demand prove its case in an independent body, the MSPB. That didn't exist. So Congress's two-step process for removal was no longer in existence. And therefore, under the reasoning and testing, there is an unwarranted deprivation because a deprivation of salary took place at a time when the mechanism to remove was not legally functioning. And so we fall within the jurisdiction of the Court of Federal Claims. The merits of our- The MSPB lacked a quorum for one week. And within that week, that's when the removal here by the agency took place. I guess that falls in the category of looking at the kind of most extreme example to judge a broader case. We're talking about a five- I'm trying to understand the underlying principles behind your argument. I think that a one-week loss of jurisdiction is de minimis. It could happen. It even happens in Congress. The Republican majority might disappear for a couple months, for example, because there may be resignations until a new special election. So temporary problems arise. I don't think we could judge a five-year loss of jurisdiction by that same measure. I mean, we were facing a deadlock in Congress and one on year after year after year. Hundreds of employees were in a sort of netherland or netherworld of the inability to get any remedy. So I think that if there was a one-week deprivation or lack of jurisdiction, I think it would fall into a de minimis category because that would just be between the resignation of one member and the opportunity to swear someone in there was a few days gap. But here we're dealing with a structural question. Congress was utterly refusing to approve any members to the MSPP for years. And so the whole Fifth Amendment right of the employee to have this two-step process to protect the employee was gone. In that very real way, there was no warranted basis for deprivation of salary. That Fifth Amendment interest was impugned by the government. That's what this case is about. Now, the merits of that, whether the loss of membership does make it unwarranted, would have to be decided presumably by the Court of Federal Claims if this court remands. Is there a reason why you didn't pursue this theory in your actual MSPP appeal? Yes, because we were in the Court of Federal Claims beforehand. And Judge Dietz did not rule on this question of exclusive jurisdiction to the MSPP. We had no reason to believe we would be compelled to seek that route exclusively. Judge Dietz, in fact, did not rule on it. He simply said the Court of Federal Claims has no jurisdiction because this is not a money-mandating action. And I don't think—so we didn't bring it because, frankly, we were never told by the Court of Jurisdiction of our case, the Court of Federal Claims, that we had—that was our exclusive remedy. We didn't have that fear that we were facing a legal ruling that would force us into the MSPP on this issue. If this court says that is the exclusive jurisdiction and this becomes a final stage, then I think we would go back, but I don't think we were required. I would like to point out something further. Under New Process, Steele, Noel Canning, and Free Enterprise, these are issues that don't necessarily get heard by the agency. Under Free Enterprise, it's a collateral question if it's not directly related to the personnel removal. And so, unlike Elgin, where the constitutional question of civil disobedience was tied into the removal. You were removed because you broke the law. Here, the constitutional question is irrelevant in terms of the removal. It stands outside of it. So it's collateral as the Supreme Court held in Free Enterprise Fund. So I don't think we were required to go to the MSPP at all under any reasonable examination of prevailing law. I think it would be unjust for the appellant here to lose his rights. So what remedy do you get now? Let's just say hypothetically we would agree with you. What happens in this case now? Well, there is a separate appeal on the merits of the removal, putting that aside. Assuming we lose that, let's, for the sake of argument. We still have an independent claim that during that five-year period, when the removal process could not legally be used, our client lost his salary in an unwarranted manner. And you're saying that the Court of Federal Claims should adjudicate that, not the Board. You had an opportunity to bring that before the Board, and you didn't. Well, we went to the Court of Federal Claims before we went to the Board and came back. So what you're seeking in this case is put this back in the Court of Federal Claims to adjudicate just the issue of because you've already lost on the merits. Correct. Count 4 is gone. To the extent there was collateral jurisdiction in the Court of Federal Claims, that's gone. Yes. If I interrupt you, I'm sorry. So what would be left would be the claim from the time he was removed until the time the Board quorum was there, that he should get back pay for that because there was no authority for the agency to remove him. Yes, that's precisely. And the Court of Federal Claims should adjudicate that claim. That is precisely the claim. And, in fact, under Calderon and Scientology, if I may just make one reference to case law, under Scientology, for example, the Supreme Court said, a claim's not moot if there's some remedy within the scope of the Board of Causes of Action that's still valid. I wasn't asking about moot risk. I was just really trying to understand that. Judge Sorantos. I don't think this came up in any of the briefs. Does 28 U.S.C. 1500 have any bearing here? I honestly don't know. Okay. Because I frankly don't recall what it says. That's the one that basically says when there are similar actions, similar enough actions in claims court and somewhere else, depending on timing, other things, that can't be. We don't allow simultaneous similar actions. But if you haven't explored it, I don't want to. I haven't explored it, but my feeling is that the MSPP doesn't really have authority or exclusive authority over this type of question, which is outside of the personnel action. So my answer would be we can do this. And it's a Hobson's choice. Sometimes one doesn't even know where to go. If we went to district court on a due process claim, the government might say we belong in the court of claims. And so if we're in the MSPP, the government might say that's a structural claim. You have to go to the district court itself. So we have to choose to be somewhere. And I think if it's reasonable to assume jurisdiction, the court should recognize that. Okay. Thank you. Thank you, Your Honor. I thank both sides of the case.